In this case the complainant was the owner of two apartment-houses on Prince street, Nos. 264 and 266. There was a mortgage on one, No. 264, for $10,000, held by the City Trust Company. The mortgage was called and the complainant applied to one Adolph Hollander for a loan to take the place of the City Trust Company mortgage. Mr. Hollander agreed to let him have the money and sent him to one Jacob Schneider, a lawyer, to have the necessary papers prepared. At the time appointed for the meeting in Mr. Schneider's office the defendant, Winarski, appeared and told the complainant that Mr. Hollander would not let him have the money. After some conversation, complainant agreed to convey the property to Winarski.
Complainant admits in his brief that the evidence relating to these negotiations is not introduced for the purpose of attacking the conveyance, but for the purpose of showing the surrounding circumstances and to aid in the construction of the writing, establishing a trust.
It appears by the testimony that the deed of conveyance was made by the complainant to the defendant and is dated May 3d 1919. On May 3d 1919, the same day, the defendant and his wife executed to Hollander a mortgage for the sum of $11,000 on the very same premises, and the mortgage recites the premises are the same conveyed to Winarski by Fuksman and his wife. *Page 178 
I cannot see in this case why Mr. Winarski should have told Mr. Fuksman that Hollander would not loan any money on the property, then have taken a deed to the property himself and got the very same loan from Mr. Hollander. Neither Mr. Hollander nor Mr. Schneider were called as witnesses.
At the same time that the deed was made the defendant executed an agreement in writing. This agreement has been introduced in evidence, and its provisions, in brief, are that Winarski shall not convey the premises commonly known and designated as 264 Prince street without the written consent of Fuksman. It goes on to say further that "Fuksman shall be entitled to receive the balance of the selling price of the said premises, over $16,000, first deducting the expenses which the said Winarski has in procuring new loans and taking title. It is agreed that should the said Baruch Fuksman produce a purchaser who is willing to pay more than $16,000, said Winarski shall be obliged to convey."
The question then arises as to whether or not this conveyance to Winarski, coupled with the agreement, conveys an absolute fee to Winarski, or whether it is merely a trust agreement.
I am of the opinion that it constitutes an express, active trust agreement.
The defendant was obligated to do several things — first, to sell the property at any time upon the request of the complainant for any sum in excess of $32,000, plus the expenses of new loans and title fees; second, to pay all the proceeds of sale to the complainant in excess of said $32,000 and the said expenses; third, to refrain from selling 264 Prince street for a period of two years without the complainant's written consent; fourth, to refrain from selling 266 Prince street for a period of two years without the complainant's consent in writing.
Having decided that a trust has been created, the next question is, Has this trust been terminated by the voluntary act of the complainant?
The defendant contends that the trust was terminated as to No. 266 Prince street by a release executed by complainant on November 14th, 1919, and by a quit-claim deed executed *Page 179 
by complainant on the same date; and as to No. 264 Prince street, by a release executed by complainant on April 15th, 1920, and by a quit-claim deed executed by complainant on the same date.
The evidence is that both releases were given to release the lien of a mortgage for $2,756, which defendant had made to complainant to secure the payment of certain debts of the complainant. The proof of payment of the debts is unsatisfactory, but it is not necessary to decide now whether they were paid. The releases did not affect the trust agreement. Both quit-claim deeds appear to have been given for the purpose of postponing the complainant's equitable estate to certain mortgages put on the land by the defendant, and not for the purpose of terminating the trust.
The evidence is that the complainant was in an enfeebled condition and penniless at the time these deeds were made, and that he only received a very small amount of money-about $600 according to defendant's testimony, and $400 according to complainant's — and that the property was increasing in value and is now appraised at some $50,000.
It is clear that advantage was taken of the complainant's necessities to induce him to sign the deeds, and that he did not understand that he was terminating the trust. After considering the evidence, I am of the opinion that it has not been terminated, and it was not the desire of the complainant to terminate it.
It is unnecessary for me to discuss further the testimony in this case, and I shall therefore decide that the complainant is entitled to a decree adjudging that the defendant holds the legal title to the land and premises in trust, and I shall direct that a sale shall be made and that the proceeds shall be applied as follows: To pay the complainant's costs; to pay such amount as may be found to be legally due the defendant, if any be due, and to pay the balance to the complainant. *Page 180